UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DANIEL MARCEL,

        Plaintiff,                          **MEMORANDUM AND ORDER**
                                           11-CV-1560 (RRM)(VVP)
  - against -

SHAUN DONOVAN, Secretary of U.S.
Department of Housing and Urban Development;
JOHN B. RHEA, Chairman of New York City
Housing Authority,

        Defendants.
------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff *pro se* Daniel Marcel brings this action against defendants Shaun Donovan, Secretary of the United States Department of Housing and Urban Development ("Donovan") and John Rhea, Chairman of the New York City Housing Authority ("Rhea") under Section 3 of the Housing and Urban Development ("HUD") Act of 1968, 12 U.S.C. § 1701u, for, *inter alia*, damages related to his inability to obtain employment on a public housing construction project. On March 30, 2011, the Court denied plaintiff's request for a temporary restraining order.

      Presently before the Court are plaintiff's application requesting appointment of counsel, plaintiff's motion for a preliminary injunction and defendants' cross-motions to dismiss pursuant to Rule 12(b).

      For the reasons set forth below, the Court DENIES plaintiff's motion for injunctive relief and request for appointment of counsel (Doc. Nos. 3, 8) and GRANTS defendants' cross-motions to dismiss the complaint under Rule 12(b) (Doc. Nos. 12 - 15.)[1]

---

[1] On April 15, 2012, defendant Rhea filed a fully-briefed motion to dismiss. (Doc. Nos. 12, 14-15.) That same day, in compliance with the Court's Individual Rules, Donovan filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss. (Doc. No. 13.) As the arguments raised in defendant Donovan's letter

## BACKGROUND[2]

Plaintiff claims that in August 2009, he became interested in obtaining work through the New York City Housing Authority ("NYCHA") resident employment service.[3] (Compl. (Doc. No. 1) at 10.) Plaintiff alleges that he successfully enrolled in the program and was assigned a caseworker, Michael Ducket, who was a NYCHA employee. (*Id.*) Plaintiff subsequently attended a job interview with AAH Construction Corp. ("AAH"), which had a NYCHA contract to perform construction on the Whitman and Ingersoll Houses.[4] (*Id.*) Plaintiff alleges that during the interview, at which Ducket was present, plaintiff was offered a job working for AAH Construction. (*Id.*)

Plaintiff alleges that he began working for AAH, but was terminated after about 3 months because he was not a resident of public housing. (*Id.*) Plaintiff claims that he then sought to obtain residence at a NYCHA property, but was unable to do so. (*Id.*) Nevertheless, AAH re-hired plaintiff after another NYCHA employee, Sonya Tarelli, intervened and assured AAH that plaintiff fell within Section 3 despite not residing at a NYCHA property. (*Id.*) Plaintiff worked for AAH until the end of its contract in July 2010. (*Id.*)

In March 2011, AAH began work on another NYCHA project. (*Id.*) On March 17, 2011, plaintiff approached the CEO/owner of AAH and asked to be hired again. (*Id.*) The CEO/owner told plaintiff that "he would love to have [plaintiff] back" to work on the project, provided

---

are identical to those raised in the motion filed by defendant Rhea, the Court will deem Donovan to have joined in Rhea's cross-motion to dismiss under Rule 12(b).

[2] The facts pertinent to this motion are drawn from the complaint and documents referenced therein, and are taken as true for purposes of this motion. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents incorporated by reference in the complaint.")

[3] As discussed more fully *infra*, Section 3 of the HUD Act sets forth hiring preferences favoring public housing residents and low-income people for HUD-funded construction projects. Plaintiff's complaint, read liberally, seems to allege that NYCHA and its contractors were attempting to comply with Section 3, and that the employment program to which plaintiff refers was part of that effort.

[4] The Whitman and Ingersoll houses are public housing facilities located in Brooklyn and operated by NYCHA.

plaintiff could furnish AAH with a letter from NYCHA confirming that plaintiff fell within one of the Section 3 categories. (*Id.* at 10-11.) However, a NYCHA employee, "Ms. Hewitt," allegedly refused to provide plaintiff with such a letter. (*Id.* at 11.) Ms. Hewitt allegedly informed plaintiff that she would not provide him with the letter because it was NYCHA's policy to give preference to individuals who fell within the first two categories of Section 3, i.e. residents of NYCHA properties. (*Id.*)

On March 30, 2011, plaintiff filed the instant action, alleging a cause of action under Section 3 of the HUD Act of 1968. Plaintiff seeks: (1) reinstatement of his employment with AAH; (2) injunctive relief against Rhea and Donovan; and (3) damages for lost wages. Also on March 30, 2011, plaintiff sought temporary and preliminary injunctive relief, enjoining defendants from, *inter alia*, interfering with plaintiff's employment with AAH. (Doc. No. 5.) The Court denied plaintiff's request for a temporary restraining order, (Doc. No. 6), and directed defendants by Order to Show Cause to respond to plaintiff's request for preliminary relief (Doc. No. 5). On April 15, 2011, Rhea responded, (Doc. No. 12), and filed a cross-motion to dismiss plaintiff's complaint under Rule 12(b). (Doc. Nos. 12, 14-15.) As previously noted, defendant Donovan sought leave to move on the same grounds (Doc. No. 13). On May 3, 2011, plaintiff filed an opposition to Rhea's cross-motion to dismiss. (Doc. No. 16.) Finally, on May 12, 2011, Rhea filed a reply in support of his cross-motion to dismiss. (Doc. No. 17.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a

3

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). A complaint need not contain "detailed factual allegations, but it must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).

While *pro se* plaintiffs must satisfy these pleading requirements, federal courts are "obligated to construe a *pro se* complaint liberally." *See Harris*, 572 F.3d at 71-72 (citations omitted). In other words, trial courts hold *pro se* complaints to a less exacting standard than they apply to complaints drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008). Since *pro se* litigants "are entitled to a

4

liberal construction of their pleadings, [their complaints] should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted). When a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, however, the court should not hesitate to dismiss his claim. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted); *see also Johnson v. City of N.Y.*, 669 F. Supp. 2d 444, 448, (S.D.N.Y. 2009) ("[T]o survive a motion to dismiss, even a *pro se* plaintiff must plead enough facts to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)).

## DISCUSSION

### I. Private Right of Action Under Section 3 of the HUD Act

Section 3 of the HUD Act of 1968, as amended, provides that "the Secretary [of HUD] shall require that public . . . housing agencies ["PHAs" such as NYCHA], and their contractors and subcontractors, make their best efforts, consistent with existing Federal, State, and local laws and regulations, to give low-income and very-low-income persons the training and employment opportunities generated by" certain HUD funding. 12 U.S.C. § 1701u(c)(1)(A). These efforts "shall be directed in the following order of priority": (i) residents of the housing developments for which the assistance is expended, (ii) residents of other housing developments managed by the PHA, (iii) participants in Youthbuild programs, and (iv) other low- and very low-income persons residing in the metropolitan area. *See* 12 U.S.C. § 1701u(c)(1)(B).

Plaintiff's complaint, read liberally, alleges that he is entitled to relief under Section 3 of the HUD Act.[5] Specifically, plaintiff asserts that Section 3 obligates Rhea to assist plaintiff in

---

[5] Plaintiff does not specify if he seeks relief under Section 3 pursuant to 42 U.S.C. § 1983. However, because the HUD Act of 1968 does not provide for a private action, the Court, pursuant to its duty to read plaintiff's complaint liberally, deems plaintiff to have alleged a cause of action under Section 1983, which states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

obtaining preferential employment on NYCHA projects. Thus, plaintiff argues that Rhea and Donovan, in their official capacities, should be enjoined from failing to assist him in obtaining work with AAH, and that they are liable to him for damages for lost wages. Defendants seek to dismiss the complaint on the basis that Section 3 of the HUD Act does not provide for a private right of action, and that therefore, plaintiff has failed to state a claim upon which relief can be granted.

### a. Standard Under *Gonzaga*

In *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the Supreme Court clarified the test that courts must utilize to determine whether a law gives rise to an individual right enforceable under Section 1983. For a court to find a statute enforceable under § 1983 it is insufficient for the plaintiff to fall "within the general zone of interest that the statute is intended to protect." *Id.* at 283 (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508-09 & n.9 (1990); *Suter v. Artist M.*, 503 U.S. 347, 363-64 (1992); *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28 n.1 (1981).) Instead, Section 1983 enforces only "unambiguously conferred" rights. *Id.* at 283. Courts considering whether a statute confers a right enforceable under § 1983 "require a [threshold] determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Id.*

The *Gonzaga* Court instructs lower courts to discern from "the text and structure of a statute" whether Congress intended to create an individual right. *Id.* at 286. For a statute to confer a private right of action under Section 1983, it must contain "rights-creating" language that is "phrased in terms of the persons benefitted," *id.* at 284 (quoting *Cannon v. University of Chi.*, 441 U.S. 677, 692 n.13 (1979)), rather than an "aggregate" focus on the policies and

---

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

procedures of the charged agency. *Id.* at 287-89; *see also Taylor v. Vermont Dep't of Ed*., 313 F.3d 768, 785 (2d Cir. 2002). Further, the creation by Congress of administrative procedures to address violations of a statute suggests a congressional intent not to confer a private right of action. *Gonzaga*, 536 U.S. at 288.

### b. Second Circuit Application of *Gonzaga*

The Second Circuit has applied *Gonzaga* in several cases. In *Taylor*, the Second Circuit considered a records-access provision of FERPA – the same statute at issue in *Gonzaga*. The *Taylor* court, distinguishing the provision at bar from the FERPA provision found unenforceable in *Gonzaga*, noted that the statute "combines elements of both the funding-prohibition language that the *Gonzaga* Court held does not confer an individual right and the individually focused language that evidences an intent to create an enforceable right." *Taylor*, 313 F.3d at 785. However, the court found that the structure of the statute, in which the first sentence focuses on the obligations of the Secretary of Education, shows an intent that the second sentence is merely "a limitation on which records schools should make available," and not a right enforceable under § 1983. *Id.; see also Morningside Supermarket Corp. v. New York Dep't of Health,* 432 F. Supp. 334, 342-43 (S.D.N.Y. 2006) (finding that regulations focused exclusively on funding obligations of state agency is not enforceable under § 1983).

On the other hand, the Second Circuit has found enforceable under § 1983 a law directed at the individual litigant, and that provides for mandatory action by the agency. In *Rabin v. Wilson-Coker,* 362 F.3d 190 (2d Cir. 2004), the statute under consideration, 42 U.S.C. § 1396r-6, provides that states receiving funding for welfare programs provide benefits to certain families eligible for Aid to Families with Dependent Children ("AFDC"), a former welfare program, develop a plan as set forth by the following provision:

7

> each State plan approved under this subchapter must provide that each family which was receiving [AFDC] in at least 3 of the 6 months immediately preceding the month in which such family becomes ineligible for such aid, because of . . . income from employment . . . remain eligible for assistance under the plan . . . during the immediately succeeding 6-month period.

42 U.S.C. § 1396r-6(a); *see Rabin*, 362 F.3d at 201. The Second Circuit found that the statute's focus on individual entitlement evinces an intent to confer a right, and to the extent that the statute merely requires a state plan, the Medicaid Act explicitly warns that "such [a] provision is not to be deemed unenforceable" on this ground. *Rabin*, 362 F.3d at 202 (quoting 42 U.S.C. § 1320a-2). Accordingly, the Court of Appeals found this statute enforceable. *Id.*; *see also Walker v. Clemmons*, 2005 U.S. Dist. LEXIS 4229, at *11-13 (S.D.N.Y. Mar. 22, 2005) (Food Stamp Act with its emphasis on intended beneficiaries, like the Medicaid Act's focus on welfare recipients in *Rabin*, "unambiguously" confers a right enforceable under § 1983.); *NEXTG Networks of New York v. New York*, 2004 U.S. Dist. LEXIS 25063, at *30-33 (S.D.N.Y. Dec. 10, 2004) (Telecommunications Act, which provides that "[n]o State or local statute or regulation . . . may prohibit . . . any entity to provide . . . telecommunications service," 47 U.S.C. § 253(a), enforceable under § 1983 because it is phrased in terms of persons benefitted, is concerned with whether the needs of the person benefitted is satisfied, and enforcement is not exclusively vested in the federal agency).

### c. Application of the *Gonzaga* Standard to Plaintiff's Claim

Here, plaintiff fails to meet the standard set forth in *Gonzaga*. Our sister courts have addressed the same argument plaintiff advances in the case at bar – that Section 3 of the HUD Act creates a private right of action – and all have found no such private right of action. *See, e.g., Williams v. U.S. Dep't of Hous. and Urban Dev.*, 2006 WL 2546536, at *2-10 (E.D.N.Y. Sept. 1, 2006); *Price v. Housing Auth. Of New Orleans*, 2010 WL 1930076, at *4 (E.D. La. May

8

10, 2010); *Pleasant v. Zais*, 2008 WL 4621761, at *4 (E.D. Wa. Oct. 17, 2008); *Nails Construction Co. v. City of St. Paul*, 2007 WL 423187, at *5 (D. Minn. Feb. 6, 2007). This Court joins those courts in so holding. As one court aptly noted, "it is [ ] axiomatic that '*the plaintiff must demonstrate* that' the statute creates an individual right," *Williams*, 2006 WL 2546536, at *8-9 (quoting *City of Rancho Palos Verdes v. Abramson*, 544 U.S. 113, 120 (2005)) (emphasis in original), further finding that plaintiff had "failed to provide . . . any persuasive authority indicating that [Section 3] confers an individual right to sue for hiring preference." *Id*. Here too, plaintiff has failed to meet his burden in this regard. Moreover, this court joins those that have plainly held that no such right of action may be read in to Section 3. *See, e.g., Pleasant*, 2008 WL 4621761 at *4; *Nails Construction Co.*, 2007 WL 423187 at *5.

Also compelling is the fact that HUD has enacted federal regulations providing for administrative, not private enforcement of Section 3. *See* 24 C.F.R. 135.76(a)(1). HUD's regulations require that any person who seeks to complain of noncompliance with Section 3 must file an administrative complaint, in writing with HUD. *See* 24 C.F.R. 135.76(c), (d). Plaintiff has failed to make any such filing.

## II.     Preliminary Injunction

Plaintiff has sought preliminary relief (Doc. No. 3). The standard for obtaining a preliminary injunction is well settled in this Circuit. A preliminary injunction may be granted only upon a showing by the movant of:

> (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (citations omitted). Additionally, where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *See, e.g.*, *Union Carbide Agricultural Products Co. v. Costle*, 632 F.2d 1014, 1018 (2d Cir. 1980), *cert. denied*, 450 U.S. 996 (1981). Similarly, a party seeking a mandatory injunction, which commands the enjoined party to undertake an affirmative act, must meet a more stringent test. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985) *overruled on other grounds*, *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 (1987) (mandatory inunction may only issue upon "a clear showing that the moving party is entitled to the relief requested.") (citations omitted). Finally, a party seeking an injunction that will give him essentially all the relief he requests must show a *substantial* likelihood of success on the merits. *Id.* at 1026.

In the case at bar, plaintiff cannot establish a likelihood of success, substantial or otherwise, on the merits. As discussed above, plaintiff has failed to demonstrate that Section 3 creates a private right of action that can be enforced through Section 1983, nor has plaintiff utilized the requisite administrative remedies provided for by statute. As such, his motion for preliminary relief is DENIED as moot. For the similar reasons, plaintiff's request for the appointment of counsel (Doc. No. 8) is DENIED. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim.") (citation omitted).

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss under Rule 12(b) (Doc. Nos 12-15) are GRANTED and plaintiff's complaint is hereby DISMISSED as against all defendants. Plaintiff's motion for a preliminary junction and request to appoint counsel (Doc. Nos. 3, 8) are DENIED as moot.

The Clerk of Court is directed to enter Judgment accordingly, mail a copy of the Judgment and this Memorandum and Order to plaintiff, and to close the file.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      March 14, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge